IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

U.S. DISTRICT COURT
SAVANNAH DIV.
2019 MAY -2 PM 3: 50
CLERK_____
SO. DIST. OF GA.

ALLEN JOHNSON, as brother and )
surviving heir of Jearlene )
Johnson, deceased, and on behalf )
of all wrongful death )
beneficiaries of Jearlene )
Johnson; and ALLEN JOHNSON, as )
Executor of the Estate of )
Jearlene Johnson; )
                            )
     Plaintiff, )
                            )
v. )     CASE NO. CV418-292
                            )
ADT, LLC, doing business as ADT )
Security Services, Inc.; JOHN )
DOES 1-10; THE ADT CORPORATION; )
and SAFE STREETS USA, LLC; )
                            )
     Defendants. )
_____ )

## O R D E R

Before the Court are Defendants ADT, LLC's and The ADT Corporation's Motion to Dismiss (Doc. 16) and Defendant Safe Streets USA, LLC's Motion to Dismiss (Doc. 17). For the following reasons, Defendants ADT LLC's and The ADT Corporation's Motion to Dismiss (Doc. 16) is **GRANTED**. Defendant Safe Streets USA, LLC's motion (Doc. 17) is **DISMISSED AS MOOT**.

### BACKGROUND

This case arises from the circumstances surrounding the death of Jearlene Johnson.[1] (Doc. 7 at ¶¶ 11-18.) On September 16, 2017,

_____

[1] For the purposes of this order, the Court will accept all factual allegations in the amended complaint as true and construe all

Decedent Johnson entered into a contract for monitoring and home security services with Defendant Safe Streets USA, LLC, an authorized dealer of Defendant ADT, LLC ("ADT"). (Id. at ¶ 11.) In reaching the agreement, Defendants were informed that Decedent Johnson suffered from Alzheimer's disease and had a tendency to wander from her home. (Id. at ¶ 12.) In the event that the alarm was triggered at Decedent Johnson's home, Defendants were instructed to contact Decedent Johnson's niece and neighbor, Sheila Archie. (Id. at ¶ 13.) On several occasions, Defendants contacted Ms. Archie when the alarm was triggered at Decedent Johnson's home. (Id.)

On December 10, 2017, the alarm was activated at Decedent Johnson's home between 1 a.m. and 2 a.m. (Id. at ¶ 14.) Despite the alarm, Defendants failed to notify Ms. Archie. (Id.) The next morning, Ms. Archie went to check on Decedent Johnson and found that Decedent Johnson had succumbed overnight to hypothermia. (Id. at ¶¶ 16-17.)

On December 10, 2018, Decedent's brother, Allen Johnson, initiated this action on the behalf of all of Decedent Johnson's beneficiaries and Decedent Johnson's estate. (Doc. 1.) In his initial complaint, Plaintiff brought suit against Defendants ADT and John Does 1-10 for negligence, gross negligence, negligent training and supervision, breach of contract, fraudulent

allegations in the light most favorable to Plaintiff. Timson v. Sampson, 518 F.3d 870, 872 (11th Cir. 2008).

2

misrepresentation, and wrongful death. (Id.) As relief, Plaintiff sought "to recover pre-death pain and suffering, funeral and burial expenses, medical expenses, and any and all other available estate claims and expenses, resulting from the death of Jearlene Johnson." (Id. at 14.) Additionally, Plaintiff requested punitive damages. (Id.)

On review, this Court identified deficiencies with respect to the jurisdictional allegations in Plaintiff's initial complaint and directed Plaintiff to file an amended complaint addressing those deficiencies. (Doc. 4.) On December 27, 2018, Plaintiff complied with this Court's directive and filed an amended complaint reasserting his previous allegations against Defendants ADT and John Does 1-10. (Doc. 7.) In the amended complaint, Plaintiff also added Defendants The ADT Corporation and Safe Streets USA, LLC as defendants in this action. (Id.)

Defendants have now filed two motions to dismiss. (Doc. 16; Doc 17.) In their nearly identical motions, Defendants contend that Plaintiff has failed to establish any possible basis for recovery and that the entirety of Plaintiff's complaint must be dismissed. Defendants allege that Plaintiff's claims fail because (1) the contract signed by Decedent Johnson bars this lawsuit, or, alternatively, limits Plaintiff's potential recovery; (2) Plaintiff's lawsuit is untimely; (3) Plaintiff's claims based on Defendants' negligence arise solely out of the contract between

3

Decedent Johnson and Defendant ADT; and (4) Plaintiff's fraudulent misrepresentation claim is inefficiently pled and substantively insufficient.

**ANALYSIS**

## I.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' " Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " Id. (quoting Twombly, 550 U.S. at 557) (alteration in original).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Id. (quoting Twombly, 550 U.S. at 570). For a claim to have facial plausibility, the plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." <u>Sinaltrainal v. Coca-Cola Co.</u>, 578 F.3d 1252, 1261 (11th Cir. 2009) (quoting <u>Iqbal</u>, 556 U.S. at 678) (internal quotations omitted). Plausibility does not require probability, "but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557). Additionally, a complaint is sufficient only if it gives "fair notice of what the . . . claim is and the grounds upon which it rests." <u>Sinaltrainal</u>, 578 F.3d at 1268 (quotations omitted) (quoting <u>Twombly</u>, 550 U.S. at 555).

When the Court considers a motion to dismiss, it accepts the well-pleaded facts in the complaint as true. <u>Sinaltrainal</u>, 578 F.3d 1252 at 1260. However, this Court is "not bound to accept as true a legal conclusion couched as a factual allegation." <u>Iqbal</u>, 556 U.S. at 678. Moreover, "unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of [plaintiff's] allegations." <u>Sinaltrainal</u>, 578 F.3d at 1268 (citing <u>Aldana v. Del Monte Fresh Produce, N.A., Inc.</u>, 416 F.3d 1242, 1248 (11th Cir. 2005)). That is, "[t]he rule 'does not impose a probability requirement at the pleading stage,' but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary

element." <u>Watts v. Fla. Int'l Univ.</u>, 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 545).

## II. <u>DEFENDANTS THE ADT CORPORATION AND SAFE STREETS USA, LLC</u>

In his briefing, Plaintiff has agreed to voluntarily dismiss Defendants The ADT Corporation and Safe Streets USA, LLC from this action without prejudice. (Doc. 22 at 1 n.1.) Pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), parties are permitted to dismiss a defendant from an action if the dismissal is requested "before the opposing party serves either an answer or a motion for summary judgment." <u>See also Klay v. United Healthgroup, Inc.</u>, 376 F.3d 1092, 1106 (11th Cir. 2004) ("Put simply, Rule 41 allows a plaintiff to dismiss all of his claims against a particular defendant . . .."). In this case, no Defendant has filed an answer or motion for summary judgment. Accordingly, Plaintiff's request is **GRANTED** and Defendants The ADT Corporation and Safe Streets, LLC are **DISMISSED WITHOUT PREJUDICE** from this action. Accordingly, Defendant Safe Street LLC's Motion to Dismiss (Doc. 17) is **DISMISSED AS MOOT.**

## III. <u>DEFENDANT ADT'S MOTION TO DISMISS</u>

Although Plaintiff has agreed to dismiss Defendants Safe Streets LLC and The ADT Corporation from this action, Plaintiff maintains his claims with respect to Defendant ADT. Accordingly, the Court will now consider the merits of Defendant ADT's Motion to Dismiss. (Doc. 16.)

6

A.    Timeliness of this Action

As an initial matter, Defendant ADT argues that Plaintiff's lawsuit must be dismissed because it is untimely. Defendant contends that Plaintiff filed this lawsuit one day after the one-year limitations period agreed to by the parties in the contract between Defendant ADT and Decedent Johnson. In response, Plaintiff disagrees and asserts that this lawsuit, filed on the one-year anniversary of Decedent Johnson's death, was properly filed on the last day of the filing period.

From this Court's assessment of the contract[2] in this case, Defendant's position is untenable. The contract between Decedent Johnson and Defendant ADT provides that **"NO SUIT OR ACTION SHALL BE BROUGHT AGAINST [ADT] AFTER THE SHORTER OF (1) ONE YEAR AFTER THE DATE OF LOSS OR (2) THE TIME ALLOWED BY LAW."** (Doc. 16, Attach. 1 at ¶ 5(f) (emphasis in original).) Based on a plain reading of the contract, Plaintiff was required to file his lawsuit within one year after the day of Decedent's death on December 10, 2017. Plaintiff filed this suit on December 10, 2018, exactly 365 days after the death of Decedent Johnson. Because

---

[2] This Court may consider the terms of the contract signed by Decedent Johnson without converting Defendant's motion to dismiss into a motion for summary judgment because the contract is central to the allegations in Plaintiff's complaint and Plaintiff has not challenged the authenticity of the contract. See Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (concluding that "a document attached to a motion to dismiss may be considered by the court without converting the motion into one for summary judgment only if the attached document is: (1) central to the plaintiff's claim; and (2) undisputed").

Plaintiff filed this lawsuit within the one-year period provided in the contract, the Court finds that Plaintiff's lawsuit complies with the terms of the contract and is timely.

Defendant attempts to complicate the plain reading of the contract provision by arguing that the contract terms provide that the calculation of the one-year filing period actually began on the date of the incident and that any resulting lawsuit should have, therefore, been filed by December 9, 2018. Further, Defendant asserts that Georgia state courts enforce filing limitations contained in contracts and that no federal rule or statute would impact the calculation of the filing period agreed to in the contract. As a result, Defendant contends that the Court must enforce the contract terms in this case, which, in Defendant's view, dictate that the filing period for this action began on the day of the incident and expired before Plaintiff filed this action.

While Defendant is correct that the filing-limitations period agreed to in the contract should be enforced in this case, the Court disagrees with Defendant's interpretation of the language in the contract. Contrary to Defendant's argument, the contract does not plainly state that the day of the incident in question counts in the calculation of the limitations period or that the lawsuit must be filed less than a year of the date of the incident. Instead, the contract plainly provides that Plaintiff must file

this lawsuit within "one year after the date of loss." (Doc. 16, Attach. 1 at ¶ 5(F).) Using common sense to interpret the plain meaning of the contract terms, Plaintiff had one year, or 365 days, from the date of Decedent Johnson's death to file this lawsuit. By filing the lawsuit on the anniversary of the Decedent's death, this action is plainly timely.[3]

B.  Exculpatory Clause

Despite this Court's conclusion that Plaintiff's complaint is timely, Defendant contends that Plaintiff's complaint must also be dismissed because Plaintiff's suit is barred by the contract at issue in this case. Defendant contends that Decedent Johnson expressly waived the ability to file suit against Defendant ADT in the initial contract that she signed to obtain home security services. Because Decedent Johnson knowingly waived any opportunity to bring suit against Defendant ADT, Defendant asserts that this action must be dismissed. Alternatively, Defendant contends that Decedent Johnson agreed to limit any potential recovery from any lawsuit to $500. In response, Plaintiff asserts that the contract terms are unenforceable and should not bar this action.

---

[3] In this Court's view, Defendant's argument borders on the nonsensical. Defendant's argument suggests that the unambiguous one-year filing provision somehow actually means that Plaintiff was required to file this lawsuit less than a year after the date of the incident. Defendant has not provided any authority to support its distorted reading of the contract. In the future, defense counsel is advised not to waste this Court's time on meritless arguments.

In Georgia, courts are instructed to "respect[] the parties' sacrosanct freedom of contract." Monitronics Intern., Inc. v. Veasley, 323 Ga. App. 126, 134, 746 S.E.2d 793, 802 (2013). In fact, "Georgia has historically afforded great protection to the freedom to contract with another person. Georgia courts are thus bound to enforce contracts as made so long as they are not contrary to law or public policy." Duncan v. Integon General Ins. Corp., 267 Ga. 646, 650, 482 S.E.2d 325, 328 (1997). Generally, "exculpatory clauses in which a business seeks to relieve itself from its own negligence are valid and binding in [Georgia], 'and are not void as against public policy unless they purport to relieve liability for acts of gross negligence or willful or wanton conduct.' " Monitronics, 323 Ga. App. at 135, 746 S.E.2d at 802 (quoting Holmes v. Clear Channel Outdoor, Inc., 284 Ga. App. 474, 477, 644 S.E.2d 311, 314 (2007)). "Because exculpatory clauses may amount to 'an accord and satisfaction of future claims and waive substantial rights, they require a meeting of the minds on the subject matter and must be explicit, prominent, clear and unambiguous.' " Id. (quoting Holmes, 284 Ga. App. at 477, 644 S.E.2d at 314).

In this case, the contract Decedent Johnson signed with Defendant ADT contains several provisions designed to limit Defendant ADT's liability. These provisions all appear in section 5 of the contract, entitled "**LIMITATION OF LIABILITY**." (Doc. 16,

Attach. 1 at ¶ 5 (emphasis in original).) The first two subparagraphs in section 5 read as follows:

A. INSURANCE; WAIVER OF SUBROGATION. I AGREE THAT [ADT] IS NOT AN INSURER AND THAT [ADT] IS NOT PROVIDING ME WITH INSURANCE OF ANY TYPE. THE AMOUNTS I PAY [ADT] ARE NOT INSURANCE PREMIUMS AND ARE NOT RELATED TO . . . ANY RISK OF LOSS AT MY PREMISES. INSTEAD, THE AMOUNTS [ADT] CHARGES ME ARE BASED SOLELY UPON THE VALUE OF THE EQUIPMENT AND SERVICES [ADT] PROVIDES AND UPON THE LIMITED LIABILITY [ADT] ASSUMES UNDER THIS CONTRACT. IF I WANT INSURANCE TO PROTECT AGAINST ANY RISK OF LOSS AT MY PREMISES, I WILL PURCHASE IT. IN THE EVENT OF ANY LOSS, DAMAGE, OR INJURY, I WILL LOOK EXCLUSIVELY TO MY INSURER AND NOT TO [ADT] TO COMPENSATE ME OR ANYONE ELSE. I RELEASE AND WAIVE FOR MYSELF AND MY INSURER ALL SUBROGATION AND OTHER RIGHTS TO RECOVER AGAINST [ADT] ARISING AS A RESULT OF THE PAYMENT OF ANY CLAIM FOR LOSS, DAMAGE OR INJURY.

B. NO GUARANTEE; NO LIABILITY. [ADT]'S EQUIPMENT AND SERVICES DO NOT CAUSE AND CANNOT ELIMINATE OCCURENCES OF THE EVENTS THEY ARE INTENDED TO DETECT OR AVERT . . . [ADT] DOES NOT UNDERTAKE ANY RISK THAT I… MAY BE SUBJECT TO INJURY OR LOSS IF SUCH AN EVENT OCCURS. THE ALLOCATION OF SUCH RISK REMAINS WITH ME, AND NOT WITH [ADT]. I RELEASE, WAIVE, DISCHARGE AND PROMISE NOT TO SUE OR BRING ANY CLAIM OF ANY TYPE AGAINST [ADT] FOR LOSS, DAMAGE, INJURY, RELATING TO THE EQUIPMENT OR SERVICES PROVIDED BY [ADT].

(Id. at ¶¶ 5(A), 5(B) (emphasis in original).) In addition to the above provisions, Decedent Johnson also agreed to expressly waive any potential tort claim against Defendant ADT. (Id. at ¶ 5(H)("**I AGREE THAT ANY DUTIES OWED TO ME BY [ADT] ARE SET FORTH IN THIS CONTRACT AND I EXPRESSLY WAIVE ANY CLAIMS OR DEFENSES BASED ON TORTIOUS CONDUCT INCLUDING WILLFUL OR INTENTIONAL TORTS.**") (emphasis in original).) Further, Decedent Johnson agreed not to hold Defendant ADT liable for any consequential or incidental

11

damages arising out of ADT's service. (Id. at ¶ 5(C) ("**UNDER NO CIRCUMSTANCES WILL I ATTEMPT TO HOLD [ADT] LIABLE FOR ANY CONSEQUENTIAL OR INCIDENTAL DAMAGES, INCLUDING WITHOUT LIMITATION, DAMAGES FOR PERSONAL INJURY . . ..**") (emphasis in original).) In the event that ADT was found liable for any loss or damage, the contract provided that Defendant ADT's liability "**SHALL BE LIMITED TO A SUM EQUAL TO 10% OF THE ANNUAL SERVICE CHARGE OR $500, WHICHEVER IS GREATER.**" (Id. (emphasis in original).)

In his briefing, Plaintiff does not dispute that the contract does contain the above provisions which are designed to limit Defendant ADT's liability in the event of some loss or injury. Nor, does Plaintiff attempt to argue that the contract is invalid. Instead, Plaintiff argues that these limitation-of-liability provisions are unenforceable because they are not displayed prominently in the contract agreement. In support of his argument Plaintiff relies on Monitronics, 323 Ga. App. at 134, 746 S.E.2d at 802, and Parkside Center, Ltd. v. Chicagoland Vending, Inc., 250 Ga. App. 607, 552 S.E.2d 557 (2001).

In Monitronics, the Georgia Court of Appeals considered the prominence and enforceability of a limitation-of-liability provision contained in a home security contract. 323 Ga. App. at 135, 746 S.E.2d at 802-03. After reviewing the limitation-of-liability provision, the court found that the provision was unenforceable because the limitation-of-liability provision was on

the back of the home security contract and contained in an unlabeled subsection of a larger paragraph entitled "DAMAGES." Id. Additionally, the court took issue with the fact that the limitation-of-liability provision was not set off in its own paragraph or subparagraph, but, rather, was written in small, uncapitalized font within a subparagraph that also included seemingly unrelated information about the potential liability of police or fire departments. Id.

Similarly, in Parkside, the Georgia Court of Appeals found that an exculpatory clause releasing the defendant from all potential liability was not prominently displayed and, therefore, unenforceable. 250 Ga. App. at 611-12, 552 S.E.2d at 561-62. In that case, the court found that the exculpatory clause was unenforceable because the provision appeared on the last page of a lease agreement and was written in the same font as the surrounding paragraphs. Id. Additionally, the court noted that the exculpatory clause was not set off in its own paragraph or subparagraph but, instead, appeared as only the second clause of a sentence within a much larger paragraph. Id. Importantly, the court also noted that the paragraph containing the exculpatory language was not specifically labeled and that the unlabeled paragraph was one of many in a larger section entitled "Miscellaneous." Id. In all, the court concluded that the

exculpatory clause lacked "any indicia or prominence" and was, therefore, unenforceable. Id. at 612.

In this Court's view, the provisions contained in the contract at issue in this case are materially different from those contained in Monitronics and Parkside. Unlike in Monitronics and Parkside where the specific provision limited the defendant's liability was not set off in its own labeled paragraph, the provisions in Decedent Johnson's contract with Defendant ADT are clearly labeled in their own subparagraphs. (See Doc. 16, Attach. 1. at ¶ 5 (listing subparagraph 5(A) as "**INSURANCE; WAIVER OF SUBROGATION,**" 5(B) as "**NO GUARANTEE; NO LIABILITY,**" 5(C) as "**EXCLUSIVE REMEDY**" and 5(H) as "**WAIVER OF TORT CLAIMS**") (emphasis in original).) Moreover, the font of the subparagraphs at issue in this case are bolded and capitalized. Although many of provisions in section 5 are capitalized and bolded, most of the other 27 sections of the contract are not. In addition, the contract calls attention to the importance of section 5 above the signature line in the contract. (See Doc. 16, Attach. 1 at 2 ("**Before signing this Contract, I have read, understand and agree to each and every term of this Contract, including but not limited to Paragraphs 5 (LIMITATION OF LIABILITY)** . . ..")(emphasis in original).)

In this Court's view, the terms which limit Defendant ADT's liability are sufficiently prominent in the contract signed by Decedent Johnson. See also 2010-1 SFG Venture LLC v. Lee Bank &

Tr. Co., 332 Ga. App. 894, 898, 775 S.E.2d 243, 248 (2015) ("In determining whether a limitation of liability clause or an exculpatory clause is sufficiently prominent, courts may consider a number of factors, including whether the clause is contained in a separate paragraph; whether the clause has a separate heading; and whether the clause is distinguished by features such as font size.") The important exculpatory language in the contract is prominent and is repeated in many sections throughout the contract. Accordingly, the Court finds that the exculpatory provisions of the contract are enforceable. As a result, Plaintiff's claims for breach of contract, negligence, negligence supervision and training, and fraudulent misrepresentations are barred by the contract in this case and must be dismissed.

C.    Gross Negligence Claim

Although this Court has found that Plaintiff's suit is barred by the contract in this case, the Court pauses to address Plaintiff's gross negligence claim. As mentioned earlier, exculpatory clauses "are not void as against public policy unless they purport to relieve liability for acts of gross negligence or willful or wanton conduct." Holmes, 284 Ga. App. at 477, 644 S.E.2d at 314. Accordingly, while the exculpatory language in the contract between Decedent Johnson and Defendant ADT bars many of Plaintiff's claims, the contract's exculpatory language cannot bar Plaintiff's claim that Defendant ADT acted with gross negligence

15

by failing to contact Ms. Archie or the appropriate authorities on the night of Decedent's death. After careful consideration, however, Plaintiff's gross negligence claim fails for a different reason.

It is well settled that "[t]ort relief is available in a breach of contract setting only in a narrow range of circumstances." In re Colony Square Co., 843 F.2d 479, 482 (11th Cir. 1988). In Georgia, a plaintiff "cannot assert a claim for gross negligence based solely on Defendant['s] alleged breach of [its] obligations under the [Contract]. Instead, its claim for gross negligence must be based on an alleged breach of some independent duty created by statute or common law." Allstate Ins. Co. v. ADT, LLC, 194 F. Supp. 3d 1331, 1339 (N.D. Ga. 2016) (quoting Integrated Pest Mgmt. Servs., LLC v. BellSouth Advert. & Pub. Corp., No. 1:04-cv-2880, 2005 WL 3096131, at *4 (N.D. Ga. Nov. 16, 2005)(alterations in original)).

In this case, Plaintiff complains that Defendant acted with gross negligence by failing to contact either Ms. Archie or the proper authorities when the alarm was triggered at Decedent Johnson's residence. The alleged duty to contact Ms. Archie or the proper authorities, however, arises directly from the contract signed by Decedent Johnson. The entire purpose of the contractual agreement was to ensure that others were notified in the event that the alarm was triggered at Decedent's residence. Accordingly,

Defendant's alleged failure to comply with the terms of the contract constitutes a breach of contract action, not a tort action.

Additionally, Plaintiff has failed to allege that Defendant ADT owed or violated any other duty than those expressly provided for in the contract. Plaintiff attempts to argue that Defendant's failure to notify Ms. Archie or the appropriate authorities can constitute both a breach of contract action and a tort action. In support of his argument, Plaintiff cites a concurring opinion in Monitronics, 323 Ga. App. 126, 746 S.E.2d 793. In Monitronics, a plaintiff was sexually assaulted by an intruder in her home after an employee with her home security system incorrectly told the plaintiff that her security alarm was most likely triggered because she did not have a delay timer installed on her door. Id. at 127-28; 746 S.E.2d at 797-98. The plaintiff brought suit arguing, among other things, that the home security company was negligent. Id. at 129; 746 S.E.2d at 798. On appeal, the defendant argued that the plaintiff's negligence claim should have been dismissed because there was no evidence that the defendant owed the plaintiff any duty that did not arise from the contractual agreement that existed between the parties for home security services. Id. at 130; 746 S.E.2d at 799. The Georgia Court of Appeals rejected the defendant's argument and found that "there was some evidence to support the jury's finding that [the

defendant] owed [the plaintiff] an extra-contractual duty of care that it breached when its representative spoke to [the plaintiff] . . . and provided her with misinformation regarding why the final alarm sounded." Id. at 131; 746 S.E.2d at 800. Essentially, the court found that plaintiff's negligence could survive because the communication between the defendant's employee and plaintiff constituted a gratuitous undertaking that gave rise to a duty outside of the contractual agreement. Id.

In a specially concurring opinion, however, Judge Doyle disagreed with the panel opinion's reasoning. Id. at 146; 746 S.E.2d at 809. Although he agreed that the plaintiff's negligence claim survived, Judge Doyle found that plaintiff's negligence claim should have remained not due to any alleged voluntarily undertaking or extra-contractual duty that may have arisen through the security system's employee's communication with the plaintiff, but, instead, because the defendant had a duty to the plaintiff "independent of the contract because it was performing a service for her that was necessary for her protection." Id. at 146; 746 S.E.2d at 810. Plaintiff argues that based on Judge Doyle's concurring opinion, this Court should also find that Defendant ADT owed Decedent Johnson a duty independent of the contract to provide home security services because Defendant ADT was providing a service necessary for her protection.

Despite the concurrence in Monitronics, this Court remains unpersuaded that Plaintiff has properly established that Defendant ADT owed Decedent Johnson any duty that did not arise under the contractual agreement for home security services. As an initial matter, Plaintiff's argument is based on a non-binding, specially concurring opinion. Plaintiff has not offered any binding legal authority to support his position. In light of the lack of support for Plaintiff's argument, this Court is inclined to follow the guidance laid out by the panel decision in Monitronics and other courts that have also found that extra-contractual duties do not simply arise independent of home security contracts because the defendant is providing a home security service. See, e.g., Allstate Ins. Co. v. ADT, LLC, 194 F. Supp. 1331, 1340 (N.D. Ga. 2016) (finding no extra-contractual duty where plaintiff's property was damaged when defendant failed to properly install a water sensor).

As a final attempt to save his claims, Plaintiff argues that this Court should deny Defendant's motion and permit discovery in order to allow Plaintiff the opportunity to fully develop his claim that Defendant ADT owed Decedent Johnson a duty independent of the contract. Plaintiff contends that evidence may come to light as to the whether there were any communications between Defendant ADT and Decedent Johnson on the night of her death that would constitute a voluntary undertaking or give rise to an extra-

contractual duty. Although it is impossible to know at this stage whether Defendant did have any communications with Decedent Johnson on the night of her death, this Court will not allow Plaintiff's claims to remain simply to allow Plaintiff to pursue discovery in the hopes that evidence supporting an extra-contractual duty may arise. Plaintiff has failed to establish any evidence of an extra-contractual duty in his complaint and, therefore, any claim based on Defendant's gross negligence must be dismissed.[4]

### D. Fraudulent Misrepresentation Claim

On a final note, the Court will address Plaintiff's claim that "Defendant[] committed fraudulent misrepresentation when Defendant[] failed to contact Ms. Archie on December 10, 2017, . . . despite assurances that Ms. Archie would be contacted when the alarm was triggered." (Doc. 7 at ¶ 39.) This Court has already found that this claim is barred by the exculpatory language in the contract signed by Decedent Johnson. Even if the contract in this case did not bar Plaintiff's fraudulent misrepresentation claim,

---

[4] This analysis applies equally to Plaintiff's claims based on Defendant ADT's alleged negligence and negligent training and supervision of its staff. These claims were not specifically discussed in this analysis, however, because the Court concluded that the terms of the home security contract barred these claims. If the Court had concluded that the terms of the contract did not bar these claims, the Court would have still dismissed these claims due to Plaintiff's failure to establish any duty that Defendant ADT owed Decedent Johnson independent of the contract. Accordingly, all of Plaintiff's claims based on negligence, if not already barred by the contract terms, would have been dismissed.

however, Plaintiff's claim would still fail because it is insufficiently pled.

Pursuant to Federal Rule of Civil Procedure Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the requirements of Rule 9(b), "[p]laintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [p]laintiffs; and (4) what the defendants gained by the alleged fraud." Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997); accord Tello v. Dean Witter Reynolds, Inc., 494 F.3d 956, 972 (11th Cir. 2007). However, "[t]he application of Rule 9(b) . . . 'must not abrogate the concept of notice pleading.' " Id. (quoting Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001)).

In this case, Plaintiff appears to concede that his fraudulent misrepresentation claim is insufficiently pled. (See Doc. 22 at 13.) In his briefing, Plaintiff does not offer any argument that his fraudulent misrepresentation claim is properly pled or should be considered by this Court on the merits. (Id.) Instead, Plaintiff requests that the Court allow him the opportunity to amend his complaint to address the deficiencies within his allegations. (Id.)

Generally, when a claim is insufficiently pled "a party must be given at least one opportunity to amend before the district court dismisses the complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1014 (11th Cir. 2005) (citing Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001)); accord Bank v. Pitt, 928 F.2d 1108, 1112 (11th Cir. 1991) ("Where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice."), overruled on other grounds by Wagner v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002) (modifying Bank rule such that district court is not required to grant a represented plaintiff leave to amend sua sponte). However, district courts need not "allow an amendment (1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." Corsello, 428 F.3d at 1014.

In this case, allowing Plaintiff to amend his complaint would be futile. In Georgia, "actionable fraud cannot be predicated on a promise contained in a contract because the promise is to perform some act in the future, and 'normally, fraud cannot be predicated on statements which are in the nature of promises as to future events.' " BTM COM Ltd., Co. v. Vachon, 278 Ga. App. 256, 258, 628

22

S.E.2d 690, 694 (2006) (quoting Goodlett v. Ray Label Corp., 171 Ga. App. 377, 378, 319 S.E.2d 533, 535 (1984)). An exception to this general rule, however, "exists where a promise as to future events is made with a present intent not to perform or where the promisor knows that the future event will not take place." Buckley v. Turner Heritage Homes, 248 Ga. App 793, 795, 547 S.E.2d 373, 376 (2001).

In this case, Plaintiff's allegation of fraudulent misrepresentation is clearly based on a promise to perform some act in the future—a promise to call Ms. Archie in the event of the alarm being triggered at Decedent Johnson's home. Accordingly, Plaintiff's fraudulent misrepresentation claim fails unless Plaintiff is able to demonstrate that Defendant ADT made the promise with no intention of ever fulfilling the contractual obligation. In the complaint, Plaintiff provides a naked allegation that Defendant ADT had no intention of contacting Ms. Archie in the event that the Decedent's alarm was triggered. (Doc 7 at ¶ 40.) Other allegations in Plaintiff's own complaint, however, plainly contradict Plaintiff's assertion. According to Plaintiff's own allegations, Defendant ADT intended to fulfill its contractual obligations and actually did so when Defendant ADT contacted Ms. Archie on several prior occasions when the alarm was triggered at Decedent's home. (Id. at ¶ 13.) Upon review, the Court is unable to reconcile the inconsistencies between

Plaintiff's claim that Defendant ADT never intended to comply with its promise to contact Ms. Archie and the facts detailed in the complaint. In this Court's view, these inconsistencies demonstrate that even if Plaintiff was given an opportunity to amend his complaint, Plaintiff would still be unable to establish a viable claim for fraudulent misrepresentation.

Moreover, Plaintiff has failed to convince this Court otherwise. Plaintiff has not provided any argument as to why he should be provided with an opportunity to amend his complaint. In his briefing, Plaintiff has made no reference to how his claim can be pled with more particularity or how his claim would survive if given the opportunity to amend. Due to Plaintiff's lack of argument and this own Court's assessment of the complaint, this Court finds that allowing Plaintiff to amend the complaint in this case would be futile. Accordingly, Plaintiff's claim for fraudulent misrepresentation is dismissed and Plaintiff will not be given an opportunity to amend his complaint.

E.   Remaining Counts

In his complaint, Plaintiff also details various other "counts." These include: Count III for vicarious liability, Count VII for punitive damages, Count VIII for pre-death injury and pain and suffering, and Count XI for wrongful death. (Doc. 7.) Although listed as individual claims, none of these counts constitute an independent cause of action. Instead, these counts are dependent

on Plaintiff's other allegations. Because Plaintiff has failed to properly allege any independent claim for relief, Plaintiff's remaining counts also fail.

## CONCLUSION

For the foregoing reasons, Defendant Safe Streets, LLC's Motion to Dismiss (Doc. 17) is **DISMISSED AS MOOT** and Defendant ADT's Motion to Dismiss (Doc. 16) is **GRANTED**. Defendants Safe Streets, LLC, The ADT Corporation, and ADT LLC are **DISMISSED** from this action.[5]

SO ORDERED this 2ND day of May 2019.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

[5] In the amended complaint, Plaintiff also raises claims against John Does 1-10. (Doc. 7.) This Court is unable to dismiss the entirety of Plaintiff's complaint at this time due to these remaining defendants.